UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BIENVENIDA DE JESUS,

      Plaintiff,

v.                                           Case No.  8:19-cv-2327-T-SPF

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____/

## ORDER

Plaintiff seeks judicial review of the denial of her claim for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was not based on substantial evidence and the ALJ did not employ proper legal standards, the Commissioner's decision is reversed.

    **I.**    **Procedural Background**

Plaintiff filed an application for a period of disability, DIB, and SSI (Tr. 186-87). The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 73-80; 84-91). Plaintiff then requested an administrative hearing (Tr. 107). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 12-49). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 58-67).

Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council granted (Tr. 181). Upon review, the Appeals Council adopted all but

one of the ALJ's findings. The Appeals Council disagreed with the ALJ's finding that Plaintiff's work skills are transferrable to the job of Gate Guard, Desk, a job the ALJ described as unskilled with a specific vocational preparation time ("SVP") of two (Tr. 66). After auditing the hearing recording, the Appeals Council discovered that the VE had testified that the Gate Guard, Desk position is semi-skilled, with an SVP of three, and that approximately 25,000 such jobs are available nationally that meet the RFC's requirement for alternating positions after a period of thirty minutes (Tr. 5, 43). As a result, the Appeals Council found that a significant number of jobs exist in the national economy and concluded that Plaintiff was not disabled (Tr. 4-7). Following the Appeals Council's decision, Plaintiff timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II. Factual Background and the ALJ's Decision

Plaintiff, who was born in 1963, claimed disability beginning December 6, 2015 (Tr. 15, 239). Plaintiff completed two years of college (Tr. 217) and her past relevant work includes a fifteen-year stint as a corrections officer (Tr. 15, 217). However, when her rheumatoid arthritis symptoms caused her to miss too many workdays, she stopped working (Tr. 30, 216-17). In addition to rheumatoid arthritis, Plaintiff alleged disability due to chronic fatigue syndrome and depression (Tr. 73).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2021, and had not engaged in substantial gainful activity since December 6, 2015, the alleged onset date (Tr. 60). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff

2

had the following severe impairments: chronic fatigue syndrome and rheumatoid arthritis (Tr. 61). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 62). The ALJ then concluded that Plaintiff retained the residual functional capacity ("RFC") to perform a reduced range of light work (Tr. 62). Specifically, the ALJ opined:

> that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), with the ability to occasionally lift or carry 20 pounds, frequently lift or carry ten pounds, sit for a period of six hours, stand and walk for a period of six hours, and push/pull as much as she can lift/ carry. She requires a sit/ stand alternative or the ability to alternate positions after a period of thirty minutes. Furthermore, she is limited to frequent bilateral reaching overhead, frequent all other types of reaching, and bilateral frequent handling, fingering, and feeling. She can frequently climb ramps and stairs and occasionally climb ladders, ropes, and scaffolds. She can frequently stoop, kneel, crouch, and crawl. She can have frequent exposure to unprotected heights, moving mechanical parts, extreme cold, and vibration.

(Tr. 62-63). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 63).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined Plaintiff could not perform her past relevant work (Tr. 65). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a Gate Guard,

Desk (Tr. 66). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 66).

### III. Legal Standard

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five

of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by

substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

### IV. Analysis

Plaintiff argues here that the ALJ erred by failing to properly evaluate her subjective complaints and by rejecting the opinions of her treating rheumatologist, Dr. Lopez-Mendez. For the reasons that follow, the Court finds that the ALJ failed to apply the correct legal standards, and the ALJ's decision is not supported by substantial evidence.

#### A. Subjective complaints

Plaintiff asserts the ALJ failed to apply the Eleventh Circuit's three-part "pain standard" and as a result failed to properly evaluate her subjective complaints. More specifically, Plaintiff indicates the ALJ focused exclusively on the objective medical findings and failed to consider the factors enumerated in 20 C.F.R. § 404.1529(c)(3).

In determining whether a claimant is disabled, the ALJ considers all symptoms, including pain, and the extent to which those symptoms are reasonably consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(a), 416.929(a). Once a claimant establishes that her pain or other subjective symptoms are disabling, "all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." *Land v. Comm'r of Soc. Sec.*, __ F.App'x. __, 2021 WL 72190, *2 (11th Cir. Jan. 8, 2021) (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)). The Eleventh Circuit has established

a three-part "pain standard" for the Commissioner to apply in evaluating a claimant's subjective complaints. The standard requires: 1) evidence of an underlying medical condition; and either 2) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or 3) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). "When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." *Davis v. Astrue*, 287 F. App'x 748, 760 (11th Cir. 2008) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)). If an ALJ rejects a claimant's subjective testimony, she must articulate explicit and adequate reasons for her decision. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation and citation omitted).[1]

In this case, in evaluating Plaintiff's subjective symptoms, the ALJ concluded that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the

---

[1] In 2017, the SSA issued new guidance to ALJs about how to evaluate subjective complaints of pain and other symptoms. The SSA eliminated the use of the term "credibility" from its sub-regulatory policy, as the Regulations do not use this term. SSR 16-3p, 2017 WL 5180304, *2 (Oct. 25, 2017). This change "clarif[ied] that subjective symptom evaluation is not an examination of an individual's character." *Id.*

medical evidence and other evidence in the record for the reasons stated in this decision"

(Tr. 64). Supporting this conclusion, the ALJ explained:

> For example, the claimant testified that she could lift no more than a gallon of milk, sit in a chair for only 15-20 minutes at a time and stand for 5-10 minutes at a time. This testimony is inconsistent with the longitudinal evidence of record, which consistently shows that, despite having rheumatoid arthritis and chronic fatigue syndrome, the claimant had a normal gait, full muscle strength, and normal muscles and joints. Additionally, the claimant indicated in a function report that she can only pay attention for a half hour at a time, but the objective evidence of record contains no support for this limitation, and the claimant has not received dedicated mental health treatment."

(Tr. 64). While the Court will not disturb clearly articulated reasons for disregarding a claimant's subjective pain testimony, such reasons must be based on substantial evidence. *Foote v. Chater,* 67 F.3d 1553, 1562 (11th Cir. 1995). Here, the longitudinal medical evidence substantiates Plaintiff's subjective complaints and the Court cannot conclude that substantial evidence supports the ALJ's contrary conclusion. Indeed, at step two the ALJ found Plaintiff suffers from both chronic fatigue syndrome and rheumatoid arthritis (Tr. 61). However, when she evaluated Plaintiff's RFC and applied the "pain standard," the ALJ pointed to medical evidence showing Plaintiff's normal gait, full muscle strength, and normal range of motion (Tr. 64). Citing to these "normal" objective findings, the ALJ discounted Plaintiff's subjective complaints as not supported by the evidence of record (Tr. 64). On review, the Court finds the ALJ's consideration of Plaintiff's subjective complaints was insufficient. "The ALJ must articulate explicit and adequate reasons for discrediting testimony concerning subjective complaints, and cannot discredit testimony as to intensity or persistence of pain and fatigue solely based on the lack of objective medical evidence." *Manzo v. Comm'r of Soc. Sec.*, 408 F. App'x. 265, 268 (11th Cir. 2011)

(per curiam) (citing *Dyer*, 395 F.3d at 1210; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2)). This is particularly important in this case because courts have recognized that both chronic fatigue syndrome and rheumatoid arthritis are characterized by a lack of objective findings. "[I]t is not unusual for a person suffering from chronic fatigue syndrome to undergo physical examinations resulting within normal limits." *Sabo v. Chater*, 955 F.Supp. 1456, 1462 (M.D. Fla. 1996) (citing *Wiliams v. Shalala*, 1995 WL 328487, *6-7 (W.D. N.Y. 1995) ("because chronic fatigue syndrome is diagnosed partially through a process of elimination, an extended medical history of 'nothing wrong' diagnoses is not unusual for a patient who is ultimately found to be suffering from the disease"); *Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir. 1994) (noting absence of definitive diagnostic tests for chronic fatigue syndrome and that it is characterized by persistent unexplained fatigue and a lack of objective proof)). Similarly, "[i]t is not uncommon for patients with … rheumatoid arthritis to have pain that waxes and wanes. … At times people suffering from [rheumatoid arthritis] can often look healthy and symptoms can change daily." *Kullman v. Colvin*, case no. 8:13-cv-225-T-24MAP, 2014 WL 542974, *6 (M.D. Fla. 2014) (citing *Rheumatoid Arthritis*, Rheumatoid Arthritis Foundation (2013), http://www.arthritis.org/disease-center/conditions-treatments/disease center/rheumatoid arthritis).

The relevant regulation recognizes that when evaluating the intensity and persistence of a claimant's symptoms, the "symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone" and dictates that the ALJ should "carefully consider any other information [the claimant] may submit

about [her] symptoms." 20 C.F.R. § 404.1529(c)(3).[2] The other evidence of record supports Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms. For example, Plaintiff's Function Report, dated January 26, 2016, indicates that she slowly does her own laundry when she is not feeling too bad (Tr. 207), that she enjoys reading the bible but "sometimes [she] feels so weak and tired and hurtful that [she] just will not do it" (Tr. 209), and that due to pain she can only pay attention for approximately fifteen minutes (Tr. 210). As a result, to finish what she starts, she "divides [tasks] by sections" (Tr. 210). At the hearing, Plaintiff also testified that she does not do much cooking, that she can sweep the house only when she is having a "good" day, and that she needs her daughter's assistance getting dressed when her arthritis "flare[s]-up" (Tr. 36-37).

---

[2] The Social Security Administration issued a Ruling to address the evaluation of evidence in cases involving chronic fatigue syndrome. *See* SSR 14-1p, 2014 WL 1371245 (April 3, 2014). This Ruling describes chronic fatigue syndrome as a "syndrome that causes prolonged fatigue lasting 6 months or more, resulting in a substantial reduction in previous levels of occupational, educational, social, or personal activities." SSR 14-1p, 2014 WL 1371245, *1, The Ruling highlights the importance of longitudinal clinical records that reflect functional status over time and include detailed medical observations, and a detailed description of how the impairment limits ability to function. If the ALJ determines that the claimant's chronic fatigue syndrome meets the durational requirement at step two, and the claimant "alleges fatigue, pain, symptoms of neurocognitive problems, or other symptoms consistent with CFS, we must consider these symptoms in deciding whether the person's impairment is 'severe' in step 2 of the sequential evaluation process, and at any later steps reached in the sequential evaluation process. If we find fatigue, pain, neurocognitive symptoms, or other symptoms cause a limitation or restriction, and they have more than a minimal effect on a person's ability to perform basic work activities, we must find that the person has a 'severe' impairment." *Id.* at *8. Finally, in assessing RFC, "we must consider all of the person's impairment-related symptoms in deciding how such symptoms may affect functional capacities." *Id.* at *9.

In addition, a review of the longitudinal medical evidence shows Plaintiff's persistent complaints of extreme fatigue and excruciating pain, consistent with her diagnoses of rheumatoid arthritis and chronic fatigue syndrome, and aligned with Plaintiff's own testimony (Tr. 271-72).  Although these symptoms have waxed and waned over time (typical for her diagnoses), they have remained the focus of Plaintiff's medical treatment throughout the relevant time frame.  As Plaintiff's treating rheumatologist Dr. Lopez-Mendez explained in January 2016:

> Bienvenida has a diagnosis of RA for many years she was originally diagnosed in Fort Lauderdale around 2000.  She initially received MTX and humira.  She moved to Polk County and was established with Dr. Tallo at Clark Doughtrey Clinic and while under his care failed Humira, Orencia and actmra.  Throughout the course of her disease she has had periods of exacerbations when she feels extremely ill, unable to get out of bed, and has severe excruciating pain all over her body.  She [sic] first saw me in 2011 and she was switched to Remicade infusions.  She continued to have these episodes of flu-like symptoms that were very debilitating.  On 4-3-12 she was seen at USF Rheumatology Clinic by Dr. Zarabadi for a second opinion. He recommended to switch from MTX to Arava and continue Remicade.  She has had intermittent Lt sided pleuritic pain.  CXR show minimal scarring, atelectasis of Lt lung base that has been stable since 2012.  She [sic] felt that Remicade was not working and was switched back to Humira which did not work either and she has been off biologics for several months. In the meantime she continues to have these episodes of profound fatigue, excruciating pain that have become more frequent and lasting longer to the point that now she can not [sic] recover between these episodes to be able to go to work.

(Tr. 272).  Subsequent rheumatology records reflect Plaintiff's continued complaints of fatigue and pain.  In April 2016, Plaintiff reported a decrease in episodes of disabling fatigue now that she was no longer working, but extreme fatigue when she exerts herself (Tr. 419).  In June 2016, Plaintiff complained of "severe pleuritic chest pain, severe fatigue, her fatigue is so debilitating she can not [sic] get out of bed some days" (Tr. 419). Two months later, Plaintiff complained of "continu[ed] … severe fatigue," and Dr. Lopez-

Mendez noted she had "very high Rheumatoid factor and strongly positive with CCP" (Tr. 419). Plaintiff reported in January 2017 that she "continues to feel bad, spent 3 weeks in bed due to profound fatigue and diffuse soreness. She also has fibromyalgia with shooting pain, burning pain" (Tr. 419). In May 2017, Plaintiff reported "recurrent episodes of joint pain and severe fatigue" (Tr. 419). Finally, in August 2017, Plaintiff "report[ed] her arthralgias are getting worse" (Tr. 419).

Insofar as the regulation requires the ALJ to consider "treatment or measures taken by the claimant for relief of symptoms," the record reflects that Plaintiff tried unsuccessfully to control her symptoms with various medications (Orencia, Humira, Actemra, and Remicade) (Tr. 419).[3] As a result, Dr. Lopez-Mendez sought approval for Plaintiff to take a new medication, Xeljanz (Tr. 419). By November 2017 Plaintiff started taking Xeljanz and felt that it was "working some" (Tr. 419-20). When Plaintiff last saw Dr. Lopez-Mendez on February 28, 2018, she reported "doing better" on Xeljanz but unfortunately continued to experience pain in her joints, episodes of profound fatigue, pain in the ball of her foot, and needed frequent rest breaks (Tr. 514-15). Plaintiff has sought treatment from a variety of medical providers, even traveling to the Cleveland Clinic in South Florida and the University of Florida in Gainesville, in an effort to resolve

---

[3] In Plaintiff's own words: "Prior to my job at the prison I was unemployed for approximately 2 years due to my condition. I was extremely sick. Unable to do anything. Afterward I was taking medication and for all those years I was able to perform better but again the disease progressed even though I changed different medication including infusions I have deteriorated pretty fast and that is the reason why I can't perform at any job as I am expected (Tr. 261).

her fatigue and flu-like symptoms. On December 28, 2015, Dr. Ivan Rivera at the Watson Clinic observed:

> … patient here complaining of feeling very tired and this is chronic and has been going on for several years with extensive workup with nothing that would explain her significant fatigue. She reports just feeling sick, "like she is dying" and this has been going on for several years. She quit working due to this reason.

(Tr. 280). The longitudinal medical evidence from these providers shows Plaintiff's persistent complaints. *See* Watson Clinic records, January 2015- January 2016 (Tr. 343-44, 352, 357, 380) (complaints of fatigue and weakness); pulmonologist Jimmy ChanPong, M.D., February 11, 2016 (Tr. 398) (complaints of left-sided chest discomfort 2-3 times a month lasting 1-7 days accompanied by flu-like illness without fever); University of Florida Physician Group, February 2016 (Tr. 413) (complaints of episodes of sudden severe fatigue to the extent that she feels that she may pass out); Family Care Physicians Group, July 2017 (Tr. 502) (complaints of inability to conduct usual activities due to fatigue, chronic loss of strength, and widespread joint and muscle aches).

In sum, the ALJ failed to discuss the bulk of the evidence that supports Plaintiff's statements and placed undue emphasis on Plaintiff's normal exam findings. Upon review of the medical and other evidence of record in this case, the Court cannot conclude that the ALJ properly considered Plaintiff's subjective statements. Because the ALJ's finding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence or other evidence" is not supported by substantial evidence, remand is necessary.

### B. Treating Physician's Opinions

Typically, when remand is required, the Court need not address remaining issues. In this case, however, Plaintiff's two contentions of error are related as they both pertain to the ALJ's RFC determination, and both require remand. For this reason, the Court will address Plaintiff's second issue, that the ALJ did not provide "good cause" for her decision to accord "little weight" to the opinions of her treating rheumatologist, Dr. Lopez-Mendez.[4] On remand, the Commissioner is directed to properly evaluate Dr. Lopez-Mendez's opinions.

The ALJ must provide "good cause" for not affording a treating physician's medical opinion substantial weight.[5] *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004). Good cause exists where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records. *Phillips*

---

[4] In her decision, the ALJ recognized that Dr. Lopez-Mendez was Plaintiff's treating rheumatologist who opined Plaintiff was totally disabled and was only capable of sitting for two hours a day, standing for zero hours a day, and would miss more than three days of work a month (Tr. 64 citing 278, 460). The ALJ discounted Dr. Lopez-Mendez's opinions because they infringe on an issue reserved for the Commissioner and because they were inconsistent with the doctor's "continued normal findings" (Tr. 64-65).

[5] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). If a doctor's statement rises to the level of a "medical opinion," an ALJ must state with particularity the weight given to that opinion and the reasons therefor. *Id.* at 1179.

*v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)); *Crawford*, 363 F.3d at 1159. Moreover, the ALJ must clearly articulate these reasons when electing to discount the opinion of a treating physician. *Phillips*, 357 F.3d at 1241. The failure to do so is reversible error. *Lewis*, 125 F.3d at 1440. In rendering this determination, the ALJ must consider: (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of the doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's opinion is with the record as a whole; and (5) the doctor's area of specialization. 20 C.F.R. §§ 404.1527(c), 416.927(c).[6] While the ALJ is required to consider each of these factors, it is not mandatory that he explicitly address them in his decision. *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011).

As an initial observation, Plaintiff acknowledges that the ALJ properly discounted Dr. Lopez-Mendez's statements that she is disabled or unable to work (Doc. 19, p.27 at n.2). Plaintiff maintains, however, that the ALJ failed to consider Dr. Lopez-Mendez's opinions rendered in a December 2017 Rheumatoid Arthritis Impairment Questionnaire. *See* Ex. 7F. Upon review the Court agrees. When the ALJ addressed Dr. Lopez-Mendez's opinions, she only cited to Exhibits 1F and 5F, Dr. Lopez-Mendez's treatment notes. Furthermore, the Court agrees with Plaintiff's assertion that the ALJ failed to provide "good cause" for according "little weight" to Dr. Lopez-Mendez's opinions (Tr. 64). Dr.

---

[6] Although these regulations have been amended effective March 27, 2017, the new regulations only apply to applications filed on or after that date. *See* 20 C.F.R. §§ 404.1520c, 416.920c. Because Plaintiff filed her claims for benefits before March 27, 2017, the rules in § 404.1527 and 416.927 govern here.

Lopez-Mendez is a rheumatologist who treated Plaintiff regularly from 2011 through 2018. On the Questionnaire, Dr. Lopez-Mendez described Plaintiff's prognosis as "guarded," described her degeneration as "moderate," and noted that objective laboratory tests support her rheumatoid arthritis diagnosis (Tr. 509-10). Dr. Lopez-Mendez indicated that Plaintiff experiences "very frequent" deep, aching pain in her hands, feet, and knees, and that she is compliant with taking her prescribed medications (Tr. 509-10). According to Dr. Lopez-Mendez, Plaintiff will need to recline or lie down during an 8-hour workday in excess of the typical 15 minutes break in the morning, 30 minute lunch break, and 15 minute afternoon break; that she can walk one city block without rest or significant pain; that she can sit for 45 minutes at a time; stand/walk for 30 minutes at a time; sit for a total of two hours in an 8-hour workday; and stand/walk for a total of 0 hours in an 8-hour workday (Tr. 511). Dr. Lopez-Mendez also opined that Plaintiff will likely be absent more than three times a month and that her impairments reasonably are consistent with her symptoms and functional limitations (Tr. 512).

The opinions Dr. Lopez-Mendez rendered on the Questionnaire are consistent with her own treatment records (and with Plaintiff's subjective reports). While Dr. Lopez-Mendez's records include objective medical findings such as normal gait, full muscle strength, and normal muscles and joints, the rheumatologist's records clearly reflect Plaintiff's consistent complaints of profound fatigue, excruciating pain, and weakness typical for patients with chronic fatigue syndrome and rheumatoid arthritis. These records also show Plaintiff's difficulty finding medications that control her symptoms. *See* Tr. 271-72; 277-78; 282-83; 288-89; 293-94; 297-98; 301-02; 418-19; 429; 436-37; 449-50; 459-

60; 469-70; 475-76; 487-88; 514-15.  Importantly, these records also reveal Dr. Lopez-Mendez's judgment about Plaintiff's symptoms.  *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting 20 C.F.R. §§ 404.1527(a)(2); 416.927(a)(2)) (recognizing that physician's treatment notes that included description of claimant's symptoms, diagnoses, and reflect judgments about the nature and severity of the impairments clearly constitute a "statement from a physician that reflect the judgments about the nature and severity of [the claimant's] impairments, including [the claimant's ] symptoms, diagnosis, and prognosis, what [the claimant] can do despite the impairment(s) and [the claimant's] physical or mental restrictions").  *See also Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1266-67 (M.D. Fla. 2012) (finding ALJ did not articulate good cause for not according controlling weight to treating doctors' "RFC opinions" where treating doctors "did not simply opine that claimant is disabled or unable to work" … "Rather, they provided opinions on [c]laimant's physical abilities and limitations in light of her impairments.").

Plaintiff has identified reversible error in that the ALJ failed to articulate good cause for affording Dr. Lopez-Mendez's opinion "little weight".  *See Winschel*, 631 F.3d at 1178-79; *Phillips*, 357 F.3d at 1241.  The ALJ's decision must be remanded on this ground as well.

Accordingly, after consideration, it is hereby

ORDERED:

  1.  The decision of the Commissioner is reversed and the case is remanded to the Commissioner for further administrative proceedings consistent with this Order.

2. The Clerk is directed to enter final judgment in favor of Plaintiff and close the case.

**ORDERED** in Tampa, Florida, on this 10th day of February, 2021.

_____
SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE